1
2
3
4
5

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

6

7   WALTER GEORGE LAUZON,

8        Plaintiff,                          No. 2:16-CV-00292-RHW

9        v.                                  **ORDER GRANTING**
                                             **DEFENDANT'S MOTION FOR**
10  NANCY A. BERRYHILL                       **SUMMARY JUDGMENT**
    (PREVIOUSLY CAROLYN W.
11  COLVIN),
    Acting Commissioner of Social
12  Security,[1]

13        Defendant.

14        Before the Court are the parties' cross-motions for summary judgment, ECF

15  Nos. 13 & 14. Mr. Lauzon brings this action seeking judicial review, pursuant to

16  42 U.S.C. § 405(g), of the Commissioner's final decision, which denied his

17  application for Disability Insurance Benefits under Title II and his application for

18  Supplemental Security Income under Title XVI of the Social Security Act, 42

19

20  _____

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 20, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Carolyn W. Colvin as the defendant in this suit. No further action need be taken to continue this suit. 42 U.S.C. § 405(g).

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1**

U.S.C §§ 401-434, 1381-1383F. After reviewing the administrative record and briefs filed by the parties, the Court is now fully informed. For the reasons set forth below, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Mr. Lauzon's Motion for Summary Judgment.

## I.    Jurisdiction

Mr. Lauzon filed his applications for Disability Insurance Benefits and Supplemental Security Income on January 3, 2013. AR 12, 218-233. His alleged onset date in his applications is September 17, 2009 (AR 218, 225); the amended alleged onset date is March 28, 2012 (AR 39).[2] Mr. Lauzon's applications were initially denied on February 27, 2013, AR 139-46, and on reconsideration on June 12, 2013, AR 150-53.

A hearing with Administrative Law Judge ("ALJ") Jesse Shumway occurred on February 24, 2015. AR 35-90. On March 23, 2015, the ALJ issued a decision finding Mr. Lauzon ineligible for disability benefits. AR 9-23. The Appeals Council denied Mr. Lauzon's request for review on June 23, 2016, AR 1-4, making the ALJ's ruling the "final decision" of the Commissioner.

---

[2] There is some discrepancy surrounding Mr. Lauzon's alleged onset date. The ALJ states the alleged onset date is August 21, 2009. AR 12, 14, 22. Claimant also initially states, in his Motion for Summary Judgment, that the alleged onset date is August 21, 2009. ECF No. 13 at 1. However, the actual applications contain the date of September 17, 2009, as the alleged onset date. AR 218, 225. Claimant later states, in his reply brief, the initial alleged onset date is September 17, 2009. ECF No. 15 at 4. Claimant also states, in his Motion for Summary Judgment, that his alleged onset date is March 28, 2012 (ECF No. 13 at 12-13), and states in his reply brief that the alleged onset date is the last day he worked in March 2012 (ECF No. 15 at 4). During the hearing with the ALJ, Claimant and his attorney stated that they should change the onset date to March 28, 2012, the last day Claimant worked. AR 39. It appears the intention was to change the alleged onset date to March 28, 2012, and the change was accepted by the ALJ. As such, the Court will use the amended onset date of March 28, 2012, in its review.

Mr. Lauzon timely filed the present action challenging the denial of benefits, on August 17, 2016. ECF No. 3. Accordingly, Mr. Lauzon's claims are properly before this Court pursuant to 42 U.S.C. § 405(g).

## II. Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant shall be determined to be under a disability only if the claimant's impairments are of such severity that the claimant is not only unable to do his previous work, but cannot, considering claimant's age, education, and work experience, engage in any other substantial gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4); *Lounsbury v. Barnhart,* 468 F.3d 1111, 1114 (9th Cir. 2006).

Step one inquires whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b) & 416.920(b). Substantial gainful

activity is defined as significant physical or mental activities done or usually done for profit. 20 C.F.R. §§ 404.1572 & 416.972. If the claimant is engaged in substantial activity, he or she is not entitled to disability benefits. 20 C.F.R. §§ 404.1571 & 416.920(b). If not, the ALJ proceeds to step two.

Step two asks whether the claimant has a severe impairment, or combination of impairments, that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c) & 416.920(c). A severe impairment is one that has lasted or is expected to last for at least twelve months, and must be proven by objective medical evidence. 20 C.F.R. §§ 404.1508-09 & 416.908-09. If the claimant does not have a severe impairment, or combination of impairments, the disability claim is denied, and no further evaluative steps are required. Otherwise, the evaluation proceeds to the third step.

Step three involves a determination of whether any of the claimant's severe impairments "meets or equals" one of the listed impairments acknowledged by the Commissioner to be sufficiently severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 & 416.920(d), 416.925, 416.926; 20 C.F.R. § 404 Subpt. P. App. 1 ("the Listings"). If the impairment meets or equals one of the listed impairments, the claimant is *per se* disabled and qualifies for benefits. *Id.* If the claimant is not *per se* disabled, the evaluation proceeds to the fourth step.

Step four examines whether the claimant's residual functional capacity enables the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(e)-(f) & 416.920(e)-(f). If the claimant can still perform past relevant work, the claimant is not entitled to disability benefits and the inquiry ends. *Id.*

Step five shifts the burden to the Commissioner to prove that the claimant is able to perform other work in the national economy, taking into account the claimant's age, education, and work experience. *See* 20 C.F.R. §§ 404.1512(f), 404.1520(g), 404.1560(c) & 416.912(f), 416.920(g), 416.960(c). To meet this burden, the Commissioner must establish that (1) the claimant is capable of performing other work; and (2) such work exists in "significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue,* 676 F.3d 1203, 1206 (9th Cir. 2012).

### III.    Standard of Review

A district court's review of a final decision of the Commissioner is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited, and the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1144, 1158-59 (9th Cir. 2012) (citing § 405(g)). Substantial evidence means "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v.*

*Chater*, 108 F.3d 978, 980 (9th Cir.1997) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)) (internal quotation marks omitted). In determining whether the Commissioner's findings are supported by substantial evidence, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)).

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the ALJ. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *see also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). Moreover, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina*, 674 F.3d at 1111. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115. The burden of showing that an error is harmful generally falls upon the party appealing the ALJ's decision. *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

## IV.    Statement of Facts

The facts of the case are set forth in detail in the transcript of proceedings and only briefly summarized here.  Mr. Lauzon was 38 years old at the amended alleged date of onset. AR 21, 218, 225. He has at least a high school education and some college. AR 21, 65, 211, 396-97, 635, 666. Mr. Lauzon is able to communicate in English. AR 21. Mr. Lauzon previously worked as a truck driver, lawn service worker, stock clerk, and construction worker. AR 21, 211, 84, 288.

## V.    The ALJ's Findings

The ALJ determined that Mr. Lauzon was not under a disability within the meaning of the Act from August 21, 2009, through the date of the ALJ's decision. AR 22.

**At step one**, the ALJ found that Mr. Lauzon had not engaged in substantial gainful activity since August 21, 2009 (citing 20 C.F.R. §§ 404.1571 et seq. & 416.971 et seq.). AR 14.

**At step two**, the ALJ found Mr. Lauzon had the following severe impairments:  degenerative disc disease, bilateral shoulder injuries, depression, and anxiety (citing 20 C.F.R. §§ 404.1520(c) & 416.920(c)). AR 14.

At **step three**, the ALJ found that Mr. Lauzon did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpt. P, App. 1. AR 16.

**At step four**, the ALJ found Mr. Lauzon had the residual functional capacity to perform light work with these limitations: (1) he can only stand 10 minutes at a time, and walk 30 minutes at a time; (2) he can only occasionally climb stairs and ramps, balance, stoop, kneel, crouch, or crawl, and never climb ropes, ladders, or scaffolds; (3) he should do no overhead lifting, and only occasional overhead reaching, with his right upper extremity; (4) he must also avoid concentrated exposure to extreme cold, heat, noise, fumes, odors, dusts, gases, and poor ventilation; (5) he must have no exposure to hazards, including unprotected heights and moving mechanical parts; and (6) he can perform simple repetitive tasks, with occasional superficial contact with the public. AR 17.

The ALJ determined that Mr. Lauzon is unable to perform any past relevant work. AR 21.

**At step five**, the ALJ found that, in light of his age, education, work experience, and residual functional capacity, in conjunction with the Medical-Vocational Guidelines, there are jobs that exist in significant numbers in the national economy that he can perform. AR 22.

## VI.    Issues for Review

Mr. Lauzon argues that the Commissioner's decision is not free of legal error and not supported by substantial evidence. Specifically, he argues the ALJ erred by: (1) improperly assessing Mr. Lauzon's subjective complaint testimony

credibility; and (2) improperly considering and weighing the medical opinion evidence.

## VII.  Discussion

### A. The ALJ Properly Discounted Mr. Lauzon's Credibility.

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective symptoms is credible. *Tommasetti v. Astrue,* 533 F.3d 1035, 1039 (9th Cir. 2008). First, the claimant must produce objective medical evidence of an underlying impairment or impairments that could reasonably be expected to produce some degree of the symptoms alleged. *Id.* Second, if the claimant meets this threshold, and there is no affirmative evidence suggesting malingering, "the ALJ can reject the claimant's testimony about the severity of [her] symptoms only by offering specific, clear, and convincing reasons for doing so." *Id.*

In weighing a claimant's credibility, the ALJ may consider many factors, including, "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Smolen*, 80 F.3d at 1284. When evidence reasonably supports either confirming or reversing the ALJ's decision, the

Court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir.1999). Here, the ALJ found that the medically determinable impairments could reasonably be expected to produce the symptoms Mr. Lauzon alleges; however, the ALJ determined that Mr. Lauzon's statements regarding intensity, persistence, and limiting effects of the symptoms were not entirely credible. AR 18. The ALJ provided three reasons for discrediting Mr. Lauzon's subjective complaint testimony. AR 18-19.

First, the ALJ stated that Mr. Lauzon's activities did not support his allegations of total disability. AR 18-19. Activities inconsistent with the alleged symptoms are proper grounds for questioning the credibility of an individual's subjective allegations. *Molina*, 674 F.3d at 1113 ("[e]ven where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment"); *see also Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ correctly noted that Mr. Lauzon had worked as a truck driver and worked mowing lawns after his initial alleged onset date in September 2009. AR 18, 238, 391, 635. Additionally, the ALJ correctly noted that Mr. Lauzon's doctors released him to full work in November 2009, after his shoulder injury, and that his back impairment existed prior to the 2009 alleged onset date but he was still able to engage in substantial gainful activity. AR 18, 348. While these

activities occurred prior to the amended onset date, they remain relevant.

Additionally, the ALJ determined Mr. Lauzon is not credible because "the

objective medical evidence does not support the level of impairment claimed [and]

Claimant is alleging a complete inability to work" due to physical pain and

depression. AR 18. However, even after the amended onset date in March 2012,

Mr. Lauzon reported that he can walk 4 to 12 blocks before he needs to rest, and in

July 2013, he reported painting the walls of his church and helping friends weed

their yard. AR 18, 69, 308, 501. These activities are inconsistent with Mr.

Lauzon's allegations of total disability.

Furthermore, additional evidence in the record to support the ALJ's

determination that Mr. Lauzon is not as impaired as he claims. An x-ray of the

spine in March 2013, showed only very mild disc height reduction and minimal

apophyseal spondylosis that was not considered clinically significant and did not

reveal any significant findings. AR 494, 519-20, 673. An MRI of Mr. Lauzon's

spine in May 2013, showed mild narrowing of some disc height, normal alignment,

and a disc protrusion contacting a nerve root. AR 541-43. X-rays of Mr. Lauzon's

cervical spine in April 2014 were negative for spinal injury or issues. AR 687, 690,

693-94. In January 2015, Mr. Lauzon's treating physician noted that Mr. Lauzon's

diagnostic tests did not show any significant abnormality to explain his back pain.

AR 737. Mr. Lauzon also had multiple normal physical examinations with normal range of motion in his extremities and no acute distress. AR 488, 700, 733.

Second, the ALJ discounted Mr. Lauzon's credibility due to a lack of mental health treatment sought by Mr. Lauzon and the fact that Mr. Lauzon voluntarily left mental health treatment after a few months. AR 19. A claimant's statements may be less credible when treatment is inconsistent with the level of complaints or a claimant is not following treatment prescribed without good reason. *Molina*, 674 F.3d at 1114; *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("Unexplained, or inadequately explained, failure to seek treatment . . . can cast doubt on the sincerity of [a] claimant's pain testimony."). Evidence in the record supports the ALJ's determination that Mr. Lauzon is not as impaired as claimed. At the hearing, Mr. Lauzon stated that his current medication for his depression is effective. AR 74. In January 2015, his treating physician stated that Mr. Lauzon's depression is stable with his medication. AR 737. Additionally, Mr. Lauzon voluntarily quit mental health counseling on August 26, 2013. AR 499.

Third, the ALJ noted an additional specific inconsistency with the record. AR 18. Mr. Lauzon alleges that his entire leg goes numb after sitting for one and a half hours or standing for even less than one minute. AR 18, 41-44. The ALJ correctly stated that this allegation is not consistent with the objective medical evidence and, with the exception of a couple of outliers in early 2013, the

complaints of weakness in his legs are not supported by objective evidence in the record; and there is no support for his complaints of numbness. AR 18.

The Court does not find the ALJ erred when assessing Mr. Lauzon's credibility because Mr. Lauzon's allegations of complete disability are inconsistent with the record and medical evidence and Mr. Lauzon's activities reflect a level of functioning that is inconsistent with his claims of total disability.

**B. The ALJ Properly Weighed the Medical Opinion Evidence.**

   **a. Legal Standard.**

The Ninth Circuit has distinguished between three classes of medical providers in defining the weight to be given to their opinions: (1) treating providers, those who actually treat the claimant; (2) examining providers, those who examine but do not treat the claimant; and (3) non-examining providers, those who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as amended).

A treating provider's opinion is given the most weight, followed by an examining provider, and finally a non-examining provider. *Id*. at 830-31. In the absence of a contrary opinion, a treating or examining provider's opinion may not be rejected unless "clear and convincing" reasons are provided. *Id*. at 830. If a treating or examining provider's opinion is contradicted, it may only be discounted

for "specific and legitimate reasons that are supported by substantial evidence in the record." *Id*. at 830-31.

The ALJ may meet the specific and legitimate standard by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (internal citation omitted). When rejecting a treating provider's opinion on a psychological impairment, the ALJ must offer more than his or her own conclusions and explain why he or she, as opposed to the provider, is correct. *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

### b. Dr. John Arnold, Ph.D.

In March and September 2011, Dr. Arnold examined Mr. Lauzon and provided an opinion regarding his mental limitations. AR 20, 603-10, 612-24. Dr. Arnold noted three areas in which Mr. Lauzon would have moderate limitations for work related activities, otherwise any other limitations were mild. AR 605, 614. Dr. Arnold opined that Mr. Lauzon was capable of understanding and carrying out simple and moderately complex instructions; he can concentrate for short periods of time; he can complete simple tasks without close supervision and not disrupt others; he can make simple work-related decisions; he would work best in positions that have only superficial interactions with others; he can ask questions and request assistance; he can use the bus for transportation; he can adapt to

changes in a work setting and set independent goals; and he can recognize hazards and take appropriate precautions. AR 606, 615.

The ALJ generally credited Dr. Arnold's reports, but discounted the check-box forms. AR 20. It appears Mr. Lauzon takes issue with the ALJ's discounting of the check-box forms presented by Dr. Arnold but not the weight given the narrative reports. Notably, the mental limitations assessed by the ALJ are more restrictive than those proposed by Dr. Arnold, and Dr. Arnold's reports were prepared the year before the relevant period. Additionally, the ALJ stated that the portions that were discounted were check-box forms with vague and ill-defined terms, and the check-box forms are not consistent with the benign findings in the narrative portions of the report. AR 20.

A discrepancy between a doctor's recorded observations and opinions is a clear and convincing reason for not relying on the doctor's opinion. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Additionally, "an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Id*. at 1216. Furthermore, check-box form statements may be given less weight when they are conclusory in nature and lack substantive medical findings to support them or they are inconsistent with the underlying medical records. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014).

Notably, agency policy directs that it is the narrative portion written by the doctor that the adjudicators are to use in the assessment of the RFC. Program Operations Manual System (POMS) DI 25020.010(B)(1); *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1005 (9th Cir. 2006) ("The POMS does not have the force of law, but it is persuasive authority."). The ALJ here did not reject the narrative portion of Dr. Arnold's report and assessment and properly relied on the narrative portion in determining Mr. Lauzon's RFC. *See Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1005 (9th Cir. 2015).

When the ALJ presents a reasonable interpretation that is supported by the evidence, it is not the role of the courts to second-guess it. *Rollins*, 261 F.3d 853, 857. The Court "must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina*, 674 F.3d 1104, 1111; *see also Thomas*, 278 F.3d 947, 954 (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). In discounting the check-box forms in Dr. Arnold's reports, the ALJ supported the determination with specific and legitimate reasons supported by substantial evidence in the record. Thus, the Court finds the ALJ did not err in his consideration of Dr. Arnold's opinion.

### c.  Dr. Debra D. Brown, Ph.D.

In May 2013 and December 2014, Dr. Brown examined Mr. Lauzon and provided an opinion regarding his mental limitations. AR 21, 640-45, 665-70. Dr. Brown assigned Mr. Lauzon a GAF rating of 51, indicating moderate symptoms or moderate difficulty in social, occupational, or school functioning. *Id*. Additionally, Dr. Brown opined that Mr. Lauzon would have a marked limitation in his ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision, and she found there were four other areas in which Mr. Lauzon would have moderate limitations for work related activities. *Id*.

The ALJ generally credited Dr. Arnold's reports, but discounted the check-box portions. AR 21. The ALJ stated that the portions that were discounted were check-box portions with vague and ill-defined terms, and the check-box forms are not consistent with the entirely normal medical evidence of record. *Id*. An ALJ may reject a doctor's opinion when it is inconsistent with other evidence in the record. *See Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). Additionally, as noted above, check-box form statements may be given less weight when they are conclusory in nature and lack substantive medical findings to support them or they are inconsistent with the underlying medical records. *Batson*, 359 F.3d at 1195; *Garrison*, 759 F.3d at 1014. Again, agency policy directs that it

is the narrative portion written by the doctor that the adjudicators are to use in the assessment of the RFC. Program Operations Manual System (POMS) DI 25020.010(B)(1). The ALJ here did not reject the narrative portion of Dr. Brown's report and thus properly relied on the narrative portion in determining Mr. Lauzon's RFC. *See Rounds*, 807 F.3d at 1005.

When the ALJ presents a reasonable interpretation that is supported by the evidence, it is not the role of the courts to second-guess it. *Rollins*, 261 F.3d 853, 857. The Court "must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina*, 674 F.3d 1104, 1111. In discounting the check-box forms in Dr. Brown's reports, the ALJ supported the determination with specific and legitimate reasons supported by substantial evidence in the record. Thus, the Court finds the ALJ did not err in his consideration of Dr. Brown's opinion.

### d.  Dr. Mahlon Dalley, Ph.D.

In May 2012, Dr. Dalley examined Mr. Lauzon and provided an opinion regarding his mental limitations. AR 20, 634-38. Dr. Dalley assigned Mr. Lauzon a GAF rating of 57, indicating moderate symptoms or moderate difficulty in social, occupational, or school functioning. *Id*. Additionally, Dr. Dalley opined that Mr. Lauzon's depression, anxiety, and panic attacks were likely to affect his ability to obtain and maintain normal employment, and he would have difficulty focusing

and paying attention to work activities and difficulty getting along with coworkers. *Id*. Dr. Dalley also opined that the prognosis for Mr. Lauzon to return to work looked promising, especially given his current medication and if he were given vocational counseling on how to enter the work force, he should be able to enter the workforce within three to nine months. AR 20, 636.

The ALJ gave Dr. Dalley's opinion great weight. AR 20. In giving Dr. Dalley's opinion great weight, the ALJ stated that "it is the most thoroughly explained and persuasive of the Department of Social and Human Services reports." AR 20.

While it is not clear, it appears Mr. Lauzon takes issue with the ALJ's assessment of great weight to the portion of Dr. Dalley's opinion stating that the prognosis looks good and Mr. Lauzon could possibly return to the work force within three to nine months. Mr. Lauzon does not state that he takes issue with the weight given, and does not argue that less weight should have been given or the opinion should have been rejected; instead he briefly notes that the report was created only two months into the relevant period and that he has not returned to the workforce after the opined time frame even after receiving medication and mental health counseling (he does not assert he has received any vocational counseling on how to enter the workforce, as suggested by Dr. Dalley). Mr. Lauzon's issue with a portion of Dr. Dalley's opinion and Mr. Lauzon's notation that he has not returned

to work does not establish error. It is the ALJ, and not the claimant, who is responsible for weighing the evidence for probity and credibility. *See Sample v. Schweiker*, 694 F.2d 639, 643 (9th Cir. 1982). Furthermore, it is the ALJ's duty to explain why "significant probative evidence has been rejected," rather than explain why it was not. *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984).

When the ALJ presents a reasonable interpretation that is supported by the evidence, it is not the role of the courts to second-guess it. *Rollins*, 261 F.3d at 857. The Court "must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina*, 674 F.3d at 1111; *see also Thomas*, 278 F.3d at 954 (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld").

The opinion of Dr. Dalley is that of a medical provider given after an examination of Mr. Lauzon. A single sentence of the opinion is only partially and tangentially contradicted by the fact that Mr. Lauzon did not return to work as Dr. Dalley opined was possible, and the opinion is not contradicted by any other medical source provider. The Court finds that the ALJ did not err in the consideration of Dr. Dalley's opinion.

# VIII. Conclusion

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and is free from legal error. Accordingly, **IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **ECF No. 13**, is **DENIED.**

2. Defendant's Motion for Summary Judgment, **ECF No. 14,** is **GRANTED.**

3. Judgment shall be entered in favor of Defendant and the file shall be **CLOSED**.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order, forward copies to counsel and **close the file**.

**DATED** this 5th day of July, 2017.


*s/Robert H. Whaley*
ROBERT H. WHALEY
Senior United States District Judge